# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LARRY D. DUNN, | ) |
| Plaintiff, | ) |
| | ) No. 15 C 4552 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| MENARD, INC. d/b/a MENARDS, | ) |
| Defendant. | ) |

## OPINION AND ORDER

After a falling stack of insulation at one of Defendant Menard, Inc.'s ("Menards") stores hit Plaintiff Larry D. Dunn, Dunn filed this action against Menards, alleging that Menards negligently stacked the insulation, causing him injuries. Menards has filed a motion for summary judgment [44]. Because Menards did not owe Dunn a duty to warn or protect, given that the stack of insulation constituted an open and obvious danger and placing such a duty on Menards would be onerous under the circumstances, Dunn cannot establish his negligence claim and so the Court enters judgment for Menards.

## BACKGROUND[1]

On January 3, 2014, Larry Dunn and his son Erik made one of their monthly trips to the Menards store in Hodgkins, Illinois.[2] On this trip to Menards, Dunn purchased rolled insulation. The cashier told Dunn to pick up the insulation in the store's self-service warehouse by pulling his car around to that area. In the warehouse, Dunn could choose from which stacks to obtain his

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts and Dunn's additional statement of facts. All facts are taken in the light most favorable to Dunn, the non-movant.

[2] Dunn is the Director of Special Projects at Columbia College Chicago and oversees small construction projects as part of his job. The record does not reflect that this visit to Menards was connected to his job duties.

purchased insulation. In 2008, Menards had installed warning signs in the warehouse that said, "For your safety, caution, do not cut bandings, do not open packages, do not pull, do not climb, and if you need assistance, please call." Doc. 43 ¶ 93. The signs were located at both ends of the warehouse approximately four feet from the ground. Neither Dunn nor Erik recalled seeing warning signs in the warehouse but have no reason to dispute evidence that such signs were posted. Menards also had security guards in the area who asked customers if they needed help. If a customer indicated he or she needed help, the security guard would radio a Menards employee to help the customer. Dunn knew he could ask for help if needed, but on this particular occasion he did not do so. Dunn and Erik had been to the outside yard and warehouse area of the store previously and observed Menards employees helping other customers. Dunn did not recall seeing any employees working in the warehouse on this occasion, however.

Before loading the insulation into his car on this occasion, Dunn surveyed the area with Erik for approximately five minutes. He noticed that one stack of insulation— approximately six to eight feet from Dunn and sixteen feet high—looked unstable and leaned to the right. Dunn told Erik to keep his eye on the leaning stack, warning Erik to be cautious when working so as not to cause the leaning stack to tip over. Dunn then counted the rolls of insulation in front of the leaning stack to ensure that they could take the necessary amounts from that stack. Concluding that they could proceed safely by drawing from the stack in front of the leaning stack, Dunn and Erik started loading the car with insulation. They worked together for approximately ten to fifteen minutes, ensuring that they did not touch the leaning stack as they worked. At some point, however, the leaning stack fell over, hit Dunn, and knocked him to the ground. Dunn was approximately eight to ten feet away and had his back to the stack at the time

it fell.  Dunn and Erik did not make any contact with the stack before it fell.  Dunn admits that he was not distracted at the time the stack fell on him.

Theresa Marin, the Hodgkins store's second assistant manager and closing manager for the front office on the day of the incident, prepared an incident report.  Two Menards team members working in the bay over from the Dunns heard the insulation fall.  They reported that Dunn and Erik had not asked for assistance and that, indeed, they had been unaware of the Dunns' presence before the insulation fell.  According to Marin, Dunn told her that as he was reaching for insulation, additional insulation fell down on him from higher up.  Kyle Krause, the general manager of the Hodgkins store at the time of the incident, walked every aisle of the store and warehouse looking for anything unsafe several times a day, typically checking the insulation three times by 5:00 p.m.  He had done so at noon on the day of Dunn's injury.  He did not recall having notice of any improperly stacked insulation on January 3 or what the stack that fell on Dunn looked like prior to the fall.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.  Fed. R. Civ. P. 56 & advisory committee's notes.  The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue

for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

To succeed on his negligence claim, Dunn must establish that (1) Menards owed him a duty, (2) Menards breached that duty, and (3) Menards' breach proximately caused his injury. *Rhodes v. Ill. Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267, 172 Ill. 2d 213, 216 Ill. Dec. 703 (1996). In determining whether a duty exists, the Court considers "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns v. City of Centralia*, 21 N.E.3d 684, 689, 2014 IL 116998, 386 Ill. Dec. 765 (2014). Menards argues that Dunn cannot prevail on his negligence claim because he cannot establish that Menards owed him any duty, particularly in light of the fact that the leaning stack of insulation constituted an open and obvious condition. An open and obvious danger does not automatically negate a finding of a legal duty but instead renders the first two factors in the legal duty inquiry slight and weighs against the imposition of such a duty. *Id.* at 690; *see also Bujnowski v. Birchland, Inc.*, 37 N.E.3d 385, 397, 2015 IL App (2d) 140578, 394 Ill. Dec. 906 (2015) ("No published premises-liability negligence case that we have found held both (1) that the open-and-obvious rule applied without exception and (2) that the defendant nonetheless owed the plaintiff a duty.").

**I.     Open and Obvious Condition**

Under the open and obvious rule, "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Rexroad v. City of Springfield*, 796 N.E.2d 1040, 1046, 207 Ill. 2d 33, 277 Ill. Dec. 674 (2003). "Whether a condition is open and obvious depends not on the subjective knowledge but on the objective knowledge of a person confronted with the same condition." *Perez v. Heffron*, --- N.E.3d ----, 2016 IL App (2d) 160015, ¶ 12 (2016). But a plaintiff's actions can affect the duty analysis: "if a reasonable person with the plaintiff's knowledge of the situation would have appreciated and avoided a hazard created by the defendant's actions, then from the defendant's perspective the plaintiff's injuries were neither foreseeable nor likely." *Smith v. MHI Injection Molding Mach., Inc.*, No. 10 C 8276, 2014 WL 1516592, at *5 (N.D. Ill. Apr. 18, 2014) (citing *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 509–11, 512 (7th Cir. 2009)); *see also Belluomini v. Stratford Green Condo. Ass'n*, 805 N.E.2d 701, 707, 346 Ill. App. 3d 687, 282 Ill. Dec. 82 (2004) (noting that determining open and obviousness based on the objective knowledge of a reasonable person only applies where the plaintiff did not see the dangerous condition). Where there is no dispute as to the physical nature of the condition, the issue is a question of law. *Bruns*, 21 N.E.3d at 690.

Here, the parties do not dispute that the stack of insulation that ultimately fell on Dunn was leaning and unstable. As in *Rivas v. Westfield Homes of Illinois, Inc.*, a reasonable person would have noticed and appreciated the danger associated with the leaning and unstable stack of insulation Dunn encountered at the Menards warehouse. 692 N.E.2d 1359, 1362, 295 Ill. App. 3d 304, 230 Ill. Dec. 193 (1998) (stack of drywall leaning against wall at construction site was open and obvious danger, with reasonable visitor expected to know "of the possibility of the

stack tipping and falling if moved"). Moreover, Dunn admits that he knew of and appreciated the danger the stack posed, warning his son to keep an eye on it and attempting not to touch it as they removed bales of insulation from the stack in front of the leaning one. *See, e.g.*, Doc. 43 ¶¶ 22, 28, 32–37, 56–57, 62, 69–70, 72–73. Taking into account Dunn's knowledge and actions, as the Court may do, *see Belluomini*, 805 N.E.2d at 707, the undisputed evidence allows for only one conclusion: that the leaning and unstable stack posed an open and obvious danger that a reasonable person with Dunn's knowledge would have appreciated, *see Camp*, 553 F.3d at 509–10 (defendant did not owe plaintiff duty of care where plaintiff knew of risk that unsecured pallet might shift during trip and thus might fall out if trailer doors were opened, noting that plaintiff's knowledge was particularly relevant to the foreseeability and likelihood of injury factors).[3]

Illinois recognizes two exceptions to the open and obvious rule for distractions and deliberate encounters. *Bruns*, 21 N.E.3d at 691. Dunn argues that both should apply, but his own admissions undermine their application. The distraction exception applies only "where evidence exists from which a court can infer that plaintiff was actually distracted." *Id.* Here, however, Dunn acknowledges that he "did not do anything to distract himself at the time of the accident." Doc. 43 ¶ 52. Although Dunn attempts to argue distraction because he turned his back on the leaning stack to place insulation in his car, "the mere fact of looking elsewhere does not constitute a distraction." *Bruns*, 21 N.E.3d at 692. Because Dunn admits he was not distracted, the distraction exception does not apply. *See Sollami v. Eaton*, 772 N.E.2d 215, 224, 201 Ill. 2d 1, 265 Ill. Dec. 177 (2002) (refusing to apply distraction exception where no evidence

---

[3] Dunn spends a good portion of his response to the motion for summary judgment arguing against summary judgment because how or why the stack fell on him is unknown. But the mechanism by which the stack fell has no relevance to whether the stack constituted an open and obvious danger. *See Bialek v. Moraine Valley Cmty. Coll. Sch. Dist. 524*, 642 N.E.2d 825, 829, 267 Ill. App. 3d 857, 204 Ill. Dec. 924 (1994) ("[T]he question of the existence of a legal duty is necessarily independent and preliminary to that of causation."). The fact that Dunn recognized that the stack could fall, which he admits in his response, underscores the open and obvious danger the leaning stack posed.

6

tended to show that plaintiff was distracted); *Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 834, 171 Ill. 2d 435, 216 Ill. Dec. 568 (1996) (distraction exception did not apply where record did not indicate that plaintiffs "were distracted or forgetful of the lake's existence when they decided to dive off the seawalls").

The deliberate encounter exception "applies where the possessor of land had reason to anticipate that the invitee would proceed to encounter an open and obvious danger because a reasonable person in the invitee's position would find the advantages of the encounter outweigh the apparent risk." *Atchley v. Univ. of Chicago Med. Ctr.*, --- N.E.3d ----, 2016 IL App (1st) 152481, ¶ 35 (2016). This exception typically applies in employment situations where plaintiffs are "forced to choose between facing danger and neglecting [their] duties." *Id.*; *see also Kleiber v. Freeport Farm & Fleet, Inc.*, 942 N.E.2d 640, 648, 406 Ill. App. 3d 249, 347 Ill. Dec. 437 (2010) ("The deliberate-encounter exception recognizes that individuals will make deliberate choices to encounter hazards when faced with employment concerns and that those encounters are reasonably foreseeable by possessors of property."). But here, Dunn faced no employment concerns or other economic reason for proceeding in the face of potential danger. *See Sollami*, 772 N.E.2d at 224 (refusing to apply deliberate encounter exception where there was no evidence of compulsion or impetus to disregard the obvious risk). He could have sought the assistance of Menards employees when he observed the leaning stack of insulation, himself acknowledging awareness of this possibility, but he did not do so and instead proceeded on his own despite knowing that the stack could fall. Under such circumstances, the deliberate encounter exception does not apply. *See Kleiber*, 942 N.E.2d at 649 (refusing to apply deliberate encounter exception where plaintiff did not seek assistance and had no economic reason, such as job requirements, for encountering the danger).

7

**II. Existence of Duty Despite Open and Obvious Condition**

Having found that the leaning stack constituted an open and obvious condition, the Court must determine whether Menards nonetheless owed Dunn a duty to warn or protect. As noted above, the existence of an open and obvious danger weighs against the imposition of a duty because "[t]he law generally assumes that persons who encounter open and obvious conditions will take care to avoid the danger inherent in such conditions," decreasing the reasonable foreseeability and likelihood of injury.[4] *Park v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 960 N.E.2d 764, 771, 2011 IL App (1st) 101283, 355 Ill. Dec. 882 (2011). Imposing a duty on Menards to monitor the stacks of insulation would be onerous, requiring it to expend significant resources to have employees constantly stationed in the warehouse to oversee its customers. Although Menards employees already perform regular inspections of the warehouse and are available to assist customers if requested, adding this additional burden would be great, particularly where Dunn did not request assistance despite recognizing the risk and knowing such an option was available. *See Kleiber*, 942 N.E.2d at 650 (placing duty on defendant to monitor pallets would be great because doing so would require having an employee stationed outside to specifically monitor pallets and immediately remove those that started to run low or became empty to avoid risk that person might try to cross a low or empty pallet, particularly where the plaintiff never sought assistance from anyone in the store); *Camp*, 553 F.3d at 511 (placing burden on defendant would be onerous where plaintiff voluntarily encounters a known risk and where defendant

---

[4] Although Dunn argues that Menards should have reasonably foreseen that customers could be injured by stacks of insulation loaded up to twenty feet from the ground in a self-serve warehouse, Dunn does not provide any legal support for this assertion and the Court is not obligated to perform Dunn's research for him. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel"); *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."). Moreover, the fact that the condition was open and obvious decreases the weight to be placed on the reasonable foreseeability factor in the duty analysis. *See Bruns*, 21 N.E.3d at 690.

would have to expend significant resources overseeing actions of others); *Belluomini*, 805 N.E.2d at 708–09 (although measures exist that can be taken to prevent injuries, where those measures end up being ineffective and the plaintiff is in a superior position to prevent injury, "the burden of constant vigilance . . . is great"). Thus, the Court finds that Menards did not owe Dunn a duty, meaning that Dunn cannot prevail on his negligence claim.

## CONCLUSION

For the foregoing reasons, the Court grants Menards' motion for summary judgment [44]. The Court enters judgment for Menards on Dunn's complaint. This case is terminated.

Dated: November 18, 2016

SARA L. ELLIS
United States District Judge